[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11041
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 1, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:01-cr-00144-SDM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL LEVEN NIX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 1, 2011)

Before BARKETT, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Paul Nix appeals the court's judgment revoking his supervised release under 18 U.S.C. § 3583(e)(3) and imposing a sentence of 21 months' imprisonment. At his final revocation hearing, Nix admitted to three "Grade C" violations including failing to check his voicemail daily, as instructed by his probation officer, and twice testing positive for marijuana. However, Nix argues that the court impermissibly relied on "guesses and hunches" to find that he had committed a "Grade A" violation, aggravated battery with a deadly weapon, against his former girlfriend, Dominique Waller. Nix seeks to have the case remanded for resentencing on the three "Grade C" violations only.

"Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)." *United States v. Sweeting*, 437 F.3d 1105, 1107 (11th Cir. 2006). In reviewing a revocation proceeding, the district court's decision that a defendant violated the terms of supervised release is reviewed for abuse of discretion. *See United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). Furthermore, we are bound by the district court's findings of fact unless they are clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

At the revocation hearing, the victim, Dominique Waller, testified that at around 2:00 a.m. on the night of November 10, 2010, she was asleep in her apartment when she heard a bang at the front door. She opened the door and defendant Nix pushed his way into the apartment. He began arguing with her, pointed a gun at her, and told her that he should have killed her a long time ago. When Waller fled to the bedroom, Nix followed, threw her on the bed and hit her across the side of her head with his gun.

Waller's houseguest, Laura Foster, corroborated Waller's testimony. Foster testified that she woke up to the sound of Nix knocking on the door. When Nix entered Waller's apartment, Foster testified that he had something in his hand that looked like a gun. He forced Waller back into the bedroom and Foster heard Waller say, "He hit me."

Finally, Officer Venus Michaud testified that, on the night of November 10, 2010, she responded to a 911 call from Waller, and when she arrived at the scene she observed that Waller had an injury on her head, as well as abrasions or red spots that were consistent with having been in a struggle. Additionally, Waller was crying when Michaud arrived at the apartment. Although Michaud testified on cross-examination that she received the 911 call from Waller at approximately 12:50 a.m., the only testimonial discrepancy that the defense points to in this case

is the one hour time difference regarding when the incident occurred. All of the material facts about the aggravated battery are corroborated by the testimony of Foster and Michaud.

The district court credited Waller's and Foster's testimony and found that it showed by a preponderance of the evidence that Nix assaulted Waller with a gun on November 10, 2010. The district court did not credit Nix's testimony, or the testimony of his alibi witness, Nix's current girlfriend, Samantha Williams, that Nix was with her in her apartment that evening.

A central point of contention at the hearing was whether Nix had used a gun to commit the offense because aggravated battery with a deadly weapon is a "Grade A" violation, and carries a higher guideline sentence than battery, a "Grade C" violation. See U.S.S.G. § 7B1.1.[1] Nix argues that "the district court, utilizing a hunch, guessed whether Mr. Nix had used a deadly weapon– i.e., a firearm– to batter Ms. Waller and further guessed as to how her alleged injuries ultimately occurred," and that the court relied on "impermissible speculation" in its findings. *United States v. Sepulveda*, 115 F.3d 882 (11th Cir. 1997). The basis for this

---

[1] Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. U.S.S.G. § 7B1.1 (b).

argument is that, in making its findings, the district court stated, "[f]rankly, my hunch is, if I were guessing, that if Mr. Nix threw [Ms. Waller] down, that he grabbed her by the arms, with or without the gun in his right hand and slung her down and when he did, probably a hand came off the shoulder and hit her a glancing blow on the forehead." However, as the government points out, this statement by the court was speculation about the nature and the exact sequence of events surrounding the altercation, and not the ultimate determination, based on evidence presented, of whether Nix had committed the aggravated battery.[2] Indeed, the court stated several times that the preponderance of the evidence showed that Nix had committed aggravated battery with a gun. In making this determination, the district court relied on the testimony of Ms. Waller. "The credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility." *Copeland*, 20 F.3d at 413.

---

[2] It should be noted that the district court could have found that Nix committed the "Grade A" violation of aggravated battery either by finding that he used a gun to commit the offense, or by finding that Nix knew Waller was pregnant at the time that he committed the battery, because battery on a pregnant woman is an aggravated battery. The district court chose to make the aggravated battery finding on the basis of the gun, even though there was also enough evidence on the record to find that Nix knew Waller was pregnant at the time the altercation occurred.

Furthermore, we find no error in the decision to credit the testimony of Waller and Foster over Nix and Williams. In making a credibility determination, a court's "choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citation omitted) (emphasis in original).

Upon review of the record and consideration of the parties' briefs, we find that the district court's findings of fact were not clearly erroneous, and the district court did not abuse its discretion in finding that Nix committed aggravated battery with a deadly weapon by a preponderance of the evidence.

**AFFIRMED.**